Paul G. Cereghini (#148016)
Daniel B. Goldman (#297238)
BOWMAN AND BROOKE LLP
2901 North Central Avenue, Suite 1600
Phoenix, Arizona 85012
Telephone:	602.643.2300
Facsimile:	602.248.0947
paul.cereghini@bowmanandbrooke.com
daniel.goldman@bowmanandbrooke.com

Neil M. Kliebenstein (#226060)
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA  95110-1364
Telephone:	(408) 279-5393
Facsimile:	(408) 279-5845
neil.kliebenstein@bowmanandbrooke.com

Attorneys for Defendant FCA US LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ANTHONY MAUI ANAYA, by and through its Successor in Interest, AMBER JENKINS; AMBER JENKINS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US, LLC a limited liability company of Delaware; CIMA'S LANDSCAPE & MAINTENANCE, INC., a California corporation; ANTHONY CIMA, an individual; ANTHONY JAMES WALKER, and individual; DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL** |

Defendant FCA US LLC ("FCA US") hereby removes to this Court, pursuant to 28 U.S.C. § 1452, an action pending in the Superior Court of California in Sacramento County, Case No. 34-2022-00314171 ("the Action"). Plaintiffs' claims against FCA US concern the design, manufacture, and sale of a 2000 Jeep Grand Cherokee. However, FCA US did not design, manufacture, or sell the subject vehicle, nor is FCA US a successor of any entity that did. Rather, FCA US is an asset purchaser of Chrysler LLC, a bankrupt entity, which was the successor in interest to the manufacturer of the subject vehicle. Any potential

liability of FCA US for Plaintiffs' claims relating to the subject vehicle, if proven, would arise solely from the terms of orders of the Bankruptcy Court, which approved the asset purchase and limited the liabilities thereby assumed by FCA US.

Because the interpretation and enforcement of the Bankruptcy Court's orders are at issue, this civil proceeding arises under Title 11—the United States Bankruptcy Code—or arises in or relates to a case under Title 11. Therefore, this Court has original jurisdiction over the Action under 28 U.S.C. § 1334(b), and the Action is removable to this Court under 28 U.S.C. § 1452(a).

**I.     Background**

**A.     The Action**

On or about January 21, 2022, Plaintiff Amber Jenkins filed the Action in the Superior Court of California in Sacramento County.[1] *See Compl.*, attached hereto as Exhibit 1. FCA US first received a copy of Plaintiffs' Complaint on February 4, 2022. *See* Service of Process Transmittal, attached hereto as Exhibit 2.

According to the Complaint, Anthony Maui Anaya died in a motor vehicle crash while operating a 2000 Jeep Grand Cherokee (the "Subject Vehicle") on August 21, 2021, in Sacramento, California. *Compl.* ¶¶ 16-24, Ex. 1. Asserting a strict product liability claim against FCA US, Plaintiff alleges that the "FCA US, LLC and its predecessors, were responsible for the design, marketing, manufacture, and distribution of the SUBJECT VEHICLE" and that the Subject Vehicle "contained design and/or manufacturing defects which presented a serious risk of injury or death from fire in foreseeable rear impacts. *Id.* ¶¶ 10, 14. In a negligence claim against FCA US LLC, Plaintiff alleges that FCA US "negligently, carelessly and/or recklessly failed to conduct an adequate recall, and failed to give adequate warnings of the dangers associated with the SUBJECT VEHICLE." *Id.* ¶¶ 31, 32. In a second and final negligence claim against FCA US LLC, Plaintiff alleges that FCA US "carelessly designed, manufactured and tested" the Subject Vehicle and that

---

[1] Plaintiff Amber Jenkins filed suit individually and as the successor in interest to the Estate of Anthony Maui Anaya.

Anaya's death was "a direct and proximate result of the conduct Defendant FCA US LLC … and the [allegedly] defective condition of the SUBJECT VEHICLE." *Id.* ¶¶ 41, 45. Plaintiff seeks compensatory and punitive damages against FCA US. *Id.* ¶ 39.

However, FCA US *did not* design, test, develop, manufacture, inspect, market, distribute, or sell the Subject Vehicle. Nor is FCA US a successor of any entity that did. Rather, FCA US is an asset purchaser of Chrysler LLC, a bankrupt entity, which was the successor in interest to the manufacturer of the subject vehicle.[2] Accordingly, FCA US's liability for claims relating to the Subject Vehicle, if any, would arise solely out of the asset purchase agreement approved by the Bankruptcy Court.

### B.     The Chrysler LLC Bankruptcy

On April 30, 2009, Chrysler LLC (subsequently known as Old Carco LLC) and 24 of its affiliated entities (collectively, "the Debtors"), filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York, Case No. 09-50002. *In re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (Bankr. S.D.N.Y.). On or about May 19, 2009, the Debtors and a newly formed and independent entity, now known as FCA US LLC,[3] entered into a Master Transaction Agreement ("MTA"). Under the terms of the MTA, FCA US purchased substantially all of Debtors' assets and assumed *certain* of their liabilities. *See* MTA, selected portions attached hereto as Exhibit 3.

The Bankruptcy Court approved the MTA and the sale by entering its Sale Order of June 1, 2009, which authorized the sale of substantially all of the Debtors' assets free and clear of all liens, claims, interests and encumbrances. *See* Order of June 1, 2009, *In re Chrysler LLC*, Case No. 09-50002 (Bankr. S.D.N.Y.), selected portions attached hereto as Exhibit 4. The asset sale to FCA US closed on June 10, 2009 ("Closing Date").

---

[2] The Subject Vehicle was manufactured by DaimlerChrysler Corporation. In 2007, DaimlerChrysler Corporation was converted to a limited liability company and renamed DaimlerChrysler Company LLC. DaimlerChrysler Company LLC was later renamed Chrysler LLC.

[3] The party to the Master Transaction Agreement was New Carco Acquisition LLC. On June 10, 2009, New Carco Acquisition LLC changed its name to Chrysler Group LLC. Effective December 15, 2014, Chrysler Group LLC changed its name to its current one, FCA US LLC (Defendant FCA US herein).

In the Sale Order, the Bankruptcy Court limited the liability of FCA US (the "Purchaser") to only those liabilities of the Debtors that were expressly assumed. With limited exceptions, FCA US did not assume liability "for any claim that . . . relates to the production of vehicles prior to the Closing Date or [] otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the closing date." *Id.* ¶ 35. Additionally, FCA US was not held to be a legal successor or a continuation of, and did not merge with, the bankruptcy Debtors. *Id*. The Bankruptcy Court specifically ordered that FCA US would "not have any successor, derivative or vicarious liabilities of any kind . . . for any Claims, including . . . products or antitrust liability." *Id*.

On November 19, 2009, the Bankruptcy Court entered another order approving an amendment to the MTA that modified the scope of FCA US's assumed liabilities and expressly insulated FCA US from liability for "any claim for exemplary or punitive damages." Order of Nov. 19, 2009, *In re Chrysler LLC*, Case No. 09-50002 (Bankr. S.D.N.Y.), attached hereto as Exhibit 5.[4]

## II.   Basis for Removal

"A party may remove any claim or cause of action in a civil action . . . to the district court where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C.] section 1334." 28 U.S.C. § 1452(a). Section 1334, in turn, confers federal courts with original jurisdiction over cases that "arise under" the bankruptcy code and those that "arise in" or "relate to" a bankruptcy proceeding. 28 U.S.C. § 1334(b); *see also In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005).

"Arising under" and "arising in" are terms of art. *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2000). Proceedings "arising under" title 11 involve causes of action created or determined by a statutory provision of that title. *Id.* Similarly, proceedings "arising in" bankruptcy cases are proceedings that would not exist outside of bankruptcy. *Id.*; *In re*

---

[4] As used herein, the Bankruptcy Court's June 1, 2009 Sale Order (approving the MTA) and November 19, 2009 Order (approving Amendment No. 4 to the MTA) shall be referred to collectively as "Sale Orders."

*Pegasus*, 394 F.3d at 1193. Proceedings that "arise in" a bankruptcy case or "arise under" Title 11 are also known as "core proceedings." *Stern v. Marshall*, 564 U.S. 462, 476 (2011).

A broader set of cases are said to "relate to" a bankruptcy proceeding when "by their nature [they] maintain a…close nexus to the bankruptcy plan or proceeding." *Id.* at 1194. Here, federal jurisdiction exists because this case "arises under," "arises in," and "relates to" the bankruptcy case of *In re Old Carco LLC (f/k/a Chrysler LLC)*.

**A.    This Court has jurisdiction under 28 U.S.C. § 1334(b) because the Action "arises under" Title 11 or "arises in" a bankruptcy case.**

The district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Any action involving the interpretation of a bankruptcy order "must be considered to arise under title 11 if the policies underlying the [Bankruptcy] Code are to be effectively implemented." *In re Franklin*, 802 F.2d 324, 326 (9th Cir. 1986); *see In re Allegheny Health, Educ. and Research Found.*, 383 F.3d 169, 175-76 (3rd Cir. 2004) (upholding determination "that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders"); *In re Millennium Sea Carriers, Inc.*, 458 F.3d 92, 95 (2nd Cir. 2006) (holding that a request for the bankruptcy court to enforce a sale order constitutes a core proceeding); *see also In re Karykeion, Inc.*, No. 12-1363, 2013 WL 1890626, at *3 (B.A.P. 9th Cir. May 6, 2013) (holding that "as this adversary proceeding turned on the interpretation of agreements approved by and incorporated into a [bankruptcy] sale order, it was a core matter").

Relatedly, bankruptcy courts themselves have the power and jurisdiction to interpret and enforce their own orders.[5] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Franklin*, 802 F.2d at 326 ("Simply put, bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are

---

[5] This is true even if the underlying bankruptcy case has closed. *See In re Pegasus*, 394 F.3d at 1193-94; *In re Williams*, 256 B.R. 885, 892 (8th Cir. 2001) ("It is also well established that bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders.").

ultimately executed in the intended manner."). Accordingly, the Bankruptcy Court expressly retained jurisdiction "to interpret, implement and enforce the terms and provisions" of its Sale Orders "including to . . . protect the Purchaser [FCA US] against any Claims." *See* Order of June 1, 2009, ¶ 59, Ex. 4. The Bankruptcy Court also expressly retained jurisdiction "over all matters or disputes arising out of or in connection with" its subsequent Order approving Amendment No. 4 to the MTA. *See* Order of Nov. 19, 2009, ¶ 2, Ex. 5. However, before a bankruptcy court can assume jurisdiction over a state law action as described above, the action must first be removed to the federal district court encompassing the state court venue pursuant to § 1334(b). *See* 28 U.S.C. § 157(a) ("Each district court may provide that any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

As noted above, contrary to Plaintiffs' allegations, FCA US did not design, develop, manufacture, inspect, test, sale, market, or distribute the 2000 Jeep Grand Cherokee. Rather, the Subject Vehicle was designed and sold by the now-defunct DaimlerChrysler Corporation years before FCA US came into existence. Plaintiffs seek to impose liability upon FCA US for alleged actions that, if true, would be properly attributable of the bankrupt Debtors. *See* Sales Orders, Exs. 4 & 5. But for the Bankruptcy Court's issuance of the Sale Orders, no basis would exist for *any* claim to be asserted against FCA US for *any* liabilities incurred by the bankrupt Debtors.[6] *Id.* Accordingly, any claims Plaintiffs assert against FCA US for the alleged actions of the bankrupt Debtors necessarily implicates and requires judicial interpretation of the Sale Orders entered in *In re Old Carco LLC (f/k/a Chrysler LLC)*.

Indeed, interpretation of the very Sale Orders at issue in this case has been found to constitute a "core proceeding" arising in the bankruptcy by the Bankruptcy Court for the Southern District of New York—the court that issued those orders. *See* Order Granting Defendant's Motion to Dismiss, *Wolff v. Chrysler Group LLC*, Ad. Proc. No. 10-05007

---

[6] FCA US does not concede that the Sale Orders provide a basis for the specific claims asserted by these specific plaintiffs in the present action.

(Bankr. S.D.N.Y, J. Gonzalez, July 30, 2010) (wherein the Bankruptcy Court held that a claim asserted against FCA US [then known as Chrysler Group LLC] and removed from state court and transferred to the Bankruptcy Court was a core proceeding as it was "ancillary to the Sale Order"), attached hereto as Exhibit 6.

Many other district courts have reached the same conclusion, finding that interpretation and enforcement of the Sale Order constitutes a "core proceeding" subject to bankruptcy jurisdiction. *See*, *e.g.*, *Dotson v. FCA US LLC*, No. 6:19-CV-00581, 2020 WL 815676, at *3 (E.D. Tex. Feb. 19, 2020) (finding plaintiff's claims to be a core proceeding because they "rely on the Master Transaction Agreement, without which, FCA would have no connection to the lawsuit"); *White v. FCA US, LLC*, 579 B.R. 804, 811 (E.D. Mich. 2017) (finding that "the state case 'arises in' and 'relates to' the bankruptcy, because (1) FCA did not exist when the 2003 Jeep was made and was not the entity that designed or manufactured the Jeep; (2) FCA's liability for the claims pleaded in the complaint necessarily derives from the bankruptcy sale agreement and order confirming that sale that was entered in the bankruptcy case; and (3) in order for the case to proceed at all, the plaintiff must begin by showing that FCA assumed liability for the claims pleaded"); *Powell v. FCA US LLC*, No. 3:15-cv-393, 2015 WL 5014097, at *4 (M.D. Ala. Aug. 21, 2015) ("Before any court considers the merits of the case, it will first have to interpret the scope of the Sale Order as applied to the Plaintiffs' claims. Therefore, the court finds that the case 'arises in' a bankruptcy case and that it is a core proceeding. There is proper jurisdiction under § 1334(b) [and] removal was proper under § 1452[.]"); *Martin v. Chrysler Group LLC*, No. 6:12-cv-00060, 2013 WL 5308245, at *4 (W.D. Va. Sept. 20, 2013) (finding that bankruptcy jurisdiction existed because the plaintiffs' claims "would not exist 'but for' the Sale Order"); *Quesenberry v. Chrysler Group, LLC*, No. 12-cv-480-ART, 2012 WL 3109431, at *4 (E.D. Ky. July 31, 2012) (finding case to be a core proceeding because it involved "the interpretation and enforcement of the Bankruptcy Court's Sale Order and Purchase Agreement"). *But see, e.g.*, *Ingman v. FCA US LLC*, No. CV-17-00069-GF-BMM, 2017 WL 5465521, at *4 (D. Mont. Nov. 14, 2017) (noting conflicting district-court case law and

ultimately concluding that the Sale order did not govern certain product liability claims regarding pre-bankruptcy vehicle, which were not "core" claims arising under Title 11).

Interpretation of the underlying bankruptcy Sale Order need not be a complicated endeavor to confer the status of a "core proceeding." *See, e.g.*, *Martinez-Garcia v. FCA US LLC*, No. 1:18-CV-582, 2018 WL 10374703, at *4 (E.D. Tex. Dec. 20, 2018) (finding plaintiff's claims involve a core proceeding because they arise from assumption of liabilities in the Master Transaction Agreement, making interpretation of that Agreement a "required," even if a relatively "simple," task). Here, however, the interpretative issues are not merely theoretical or straightforward, because Plaintiffs seek "an award of punitive damages" against FCA US, *Compl.* at 39, Ex. 1, even though the bankruptcy court's approval of Amendment No. 4 to the MTA provides that FCA US's assumptions of liability "do not include any claim for exemplary or punitive damages," Order of Nov. 19, 2009, Ex. 5. The determination of whether Plaintiffs' "punitive damages request is barred by the bankruptcy court's orders necessarily requires interpretation of the Sale Order," *Dearden v. FCA US LLC*, No. 5:16-cv-00713-JFL, 2017 WL 1190980, *3 (E.D. Pa. March 31, 2017), and the interpretation can be quite nuanced, *see In re Old Carco LLC*, 582 B.R. 838, 845 (Bankr. S.D.N.Y. 2018) (holding that Sale Order did not bar certain claims for punitive damages caused *solely* by New Chrysler's alleged post-Closing breach of independent duties).

This case "arises under" or "arises in" title 11 through *In re Old Carco LLC (f/k/a Chrysler LLC)* because any liability of FCA US for Plaintiffs' claims must derive from the MTA and its amendments, as approved and ordered by the Bankruptcy Court's Sale Orders. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

**B.     This Court has jurisdiction also because the Action "relates to" a bankruptcy case.**

"The grant of jurisdiction over proceedings "related to" the bankruptcy case is quite broad." *In re Greektown Holdings, LLC*, *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995). Thus, even if this case were not held to directly "arise in" the bankruptcy

proceedings, 28 U.S.C. § 1334(b) would still confer federal jurisdiction over this case as it inarguably "relates to" a bankruptcy case. *See In re Pegasus*, 394 F.3d at 1193.

The Ninth Circuit has adopted a "close nexus" test to determine the scope of "related to" jurisdiction in post-confirmation cases such as this. *In re Wilshire*, 729 F.3d at 1287. The test "encompasses matters affecting the interpretation, implementation, consumnation, execution, or administration the confirmed [bankruptcy] plan." *Id*. The "close nexus" test "requires particularized considerations of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and retains a certain flexibility." *Id*. at 1289. In *In re Wilshire*, the merits of the plaintiffs' case "depend[ed] in part on the interpretation of [a] confirmed [bankruptcy] Plan," which is analogous to the MTA in *In re Old Carco, LLC*, and the bankruptcy court's Confirmation Order. *Id*. at 1289. The Ninth Circuit held that the case did "relate to" the bankruptcy proceeding because "interpretation of both [the Plan and the Confirmation Order were] essential to classifying the character of the transaction" at issue in the litigation. *Id*.

Here, Plaintiff seeks to hold FCA US accountable for alleged defects in a vehicle that was designed and manufactured by DaimlerChrysler Corporation. The Sale Orders act to transfer certain of the manufacturer's liability to FCA US. Were it not for the Sale Orders, Plaintiff would have to bring her claims as an adversary proceeding in the bankruptcy case and a successful judgment would merely make Plaintiff an unsecured creditor of the bankruptcy estate's assets. Therefore, a threshold question underlying all of Plaintiff's claims against FCA US in this litigation is whether the Bankruptcy Court ordered FCA US to assume the specific liabilities that Plaintiff asserts, including for punitive damages, as to the specific vehicle described in Plaintiff's complaint. Any answer requires the Court to construe the Bankruptcy Court's Sale Orders. The Court's construction, in turn, will necessarily have an effect on the bankruptcy estate. Accordingly, this Court has jurisdiction because Plaintiff's claims "relate to" the bankruptcy case of *In re Old Carco LLC (f/k/a Chrysler LLC)*.

For the reasons stated above, the interpretation and enforcement of the Bankruptcy Court's Sale Orders arises under, and arises in, and relates to a case under, the Bankruptcy Code, and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims asserted in Plaintiff's Complaint, because they all "involve a 'common nucleus of operative facts' and would ordinarily be expected to be resolved in one judicial proceeding." *In re Pegasus*, 394 F.3d at 1995 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see* 28 U.S.C. § 1367 ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").[7]

### III.   Procedural Requirements

The filing of the instant notice of removal is timely, as it is filed within thirty days of receipt of Plaintiff's Complaint. *See* 28 U.S.C. § 1446(b)(2)(B); Service of Process Transmittal, Ex. 2.

Because this matter is being removed pursuant to 28 U.S.C. § 1452, consent of the other defendants is not required. *Compare* 28 U.S.C. § 1446(b)(2)(A) (requiring the consent of all defendants "when a civil action is removed solely under section 1441(a)") *with* 28 U.S.C. § 1452 (containing no such consent requirement); *see also Cal. Pub. Employ Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004) ("[R]emoval under that provision [28 U.S.C. § 1452], unlike removal under Section 1441(a), does not require the unanimous consent of the defendants."); *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 770 (7th Cir. 2011) (same); *Cal. Pub. Employees' Ret. Sys. v. Wachovia Capital Mkts., LLC*, 2009 U.S. Dist. LEXIS 14222, *8 n.1 (W.D. Pa. 2009) (same).

///

---

[7] Even if supplemental jurisdiction were not appropriate, lack of supplemental jurisdiction over state law claims does not authorize "a district court to decline to entertain a claim over which it has original jurisdiction." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995).

Venue is proper in this Court because the United States District Court for the Eastern District of California is the district court for the district embracing the place where the Action is pending, Sacramento County, California. *See* 28 U.S.C. §§ 82, 1452(a).

In compliance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with clerk of the state court from which this action has been removed, and is being served upon all parties.

In compliance with 28 U.S.C. § 1446(a), true and correct copies of all pleadings and other documents that were previously filed with the state court are attached hereto as Exhibit 7. *See also* Ver. of Daniel B. Goldman, attached hereto as Exhibit 8.

By filing this Notice of Removal, FCA US does not waive any defenses available to it in this action.

## Conclusion

Based upon the foregoing, this Court has original jurisdiction over the Action under 28 U.S.C. § 1334(b), and the Action is removable to this Court under 28 U.S.C. § 1452(a). Removal is timely and all formal all requirements for removal jurisdiction have been met. Defendant FCA US LLC hereby removes this action from the Superior Court of Sacramento County to the United States District Court for the Eastern District of California for all future proceedings.

Dated: March 7, 2022                    BOWMAN AND BROOKE LLP

                                        By: /s/ Daniel B. Goldman
                                            Paul G. Cereghini
                                            Daniel B. Goldman
                                            Neil M. Kliebenstein

                                            Attorneys for Defendant FCA US LLC